

# THE ATTORNEY GENERAL
## OF TEXAS

### AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

August 25, 1960

Hon. J. M. Falkner, Commissioner　　Opinion No. WW-919
Department of Banking
Austin, Texas

Re: Whether corporations issuing
certain Debenture Installment Pur-
chase Agreements are within the
provisions of Art. 548b, V.C.S., re-
quiring corporations desiring to sell
prepaid funeral services or funeral
merchandise to obtain a permit from
Dear Mr. Falkner:　　　　　　　　the Banking Department.

　　　　You have requested our opinion on the applicability of Article 548b,
V.C.S., to certain organizations engaged in the activities described as
follows:

　　　　　　"A non-profit corporation organized under the laws
　　of Texas for the purpose of operating a cemetery is pre-
　　sently engaged in the sale of debentures, which debentures
　　are either sold outright for cash or under a Debenture In-
　　stallment Purchase Agreement where the purchaser pays
　　the purchase price in a series of installments... The
　　debentures mature in twenty years from date of issuance
　　or upon death of the purchaser if that occurs first.

　　　　　　"At the time of the sale of such a debenture, the pur-
　　chaser thereof may designate certain items of funeral mer-
　　chandise and services which he desires the members of his
　　family to purchase upon his death with the funds obtained
　　from the payment to them of the proceeds of the debenture.
　　This designation is made on a memorandum styled Advance-
　　Of-Need - Instructions and apparently it is not binding upon
　　the heirs of the purchaser... The funeral merchandise
　　and services listed in such memorandum are purchasable
　　from a separate unincorporated business concern operating
　　for profit, organized for the purpose of operating a funeral
　　home, and managed by the same person or persons who
　　manage the business activities of the non-profit corporation...

　　　　　　"....

　　　　　　"Another feature of this Debenture Installment Pur-
　　chase Agreement which may have some bearing on this mat-
　　ter is that the purchaser thereof may obtain life insurance

from an affiliated life insurance company whereby the
Debenture Installment Purchase Agreement will be paid
in full in the event the purchaser dies prior to complet-
ing the installment payments."

These facts as detailed in your request involve three separate organi-
zations. The first is a non-profit corporation engaged in sale of installment
debentures; the second, an unincorporated business concern operating a
funeral home; and the third, a Texas life insurance company. The non-profit
cemetery corporation, selling the debentures, is specifically exempt from
Article 548b by Section 1a thereof. The insurance involved is simply credit
life insurance and as such, both it and the issuing company are regulated
by pertinent provisions of the Insurance Code, not by Article 548b. This is
emphasized by Section 10a of the latter. The only remaining question is
the applicability of Article 548b to the unincorporated funeral home.

This statute regulates the sale of prepaid funeral services of mer-
chandise. Section 1 provides in part as follows:

"Any individual, firm, partnership, corporation or
association (hereinafter called 'organization') desiring to
sell prearranged or prepaid funeral services or funeral
merchandise (including caskets, grave vaults, and all other
articles of merchandise incidental to a funeral service)
in this State under a sales contract providing for prepaid
burial or funeral benefits or merchandise to be delivered
at an undetermined future date dependent upon the death
of the contracting party (hereinafter called 'prepaid funeral
benefits') shall obtain a permit from the State Banking
Department authorizing the transaction of this type of busi-
ness before entering into any such contract. . ."

The narrow question then is whether under the facts presented, the
unincorporated funeral home is entering into sales contracts providing for
prepaid funeral services or merchandise deliverable at the death of the
contracting party. The answer is no.

An analysis of the contractual arrangements shows a contract with
the non-profit corporation for the purchase of debentures and a contract
with an insurance company for the purchase of credit life insurance. The
purchaser has entered into no contract with the funeral home. The pur-
chaser may, and presumably does, fill out what is called "Advance-Of-
Need Instructions" under the letterhead of the funeral home. This is a
designation of those items of funeral services and merchandise which the
purchaser wants utilized at his funeral. As you pointed out, these instruc-
tions are not binding on anyone. The heirs may utilize the proceeds of
the debenture to purchase the designated items from the funeral home or
they may not. No consideration flows to the funeral home unless and until
the heirs elect to purchase certain items therefrom after the death of the

purchaser. Even at that time, the consideration may or may not arise from the debentures. The payee of the debentures is in all cases either the debentureholder or his estate, not the funeral home.

## SUMMARY

The business operations described in the opinion request do not bring the business concerns involved under the provisions of Article 548b, V.C.S.

Respectfully submitted,

WILL WILSON
Attorney General of Texas

By _Richard A. Wells_
Richard A. Wells
Assistant Attorney General

RAW:lmc

APPROVED:

OPINION COMMITTEE:

W. V. Geppert, Chairman
J. C. Davis
C. K. Richards
Robert H. Walls

REVIEWED FOR THE ATTORNEY GENERAL
BY: Leonard Passmore